IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN E. CARTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CVS PHARMACY, )<br>)<br>Defendant. ) | No. 19-cv-06296<br><br>Judge Andrea R. Wood |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin E. Carter has filed this *pro se* lawsuit against Defendant CVS Pharmacy ("CVS"), alleging that CVS breached the arbitration agreement Carter signed in the course of his employment there. CVS now moves to compel arbitration of Carter's claims against it and to dismiss his case for lack of subject-matter jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). (Dkt. No. 25.) For the reasons stated below, CVS's motion is granted under Rule 12(b)(3), and Carter's claims are dismissed without prejudice to him pursuing them in an appropriate arbitral forum.

**BACKGROUND**

For purposes of the present motion, the Court construes the facts as favorably to Carter as is reasonable. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (explaining that "[a]n agreement to arbitrate is a type of forum selection clause" and, for purposes of a motion to dismiss for improper venue under Rule 12(b)(3), "reasonable inferences from the facts should be construed in the plaintiffs' favor" (citations omitted)).

On November 8, 2016, CVS rehired Carter as a Shift Supervisor Trainee after previously terminating his employment. (Decl. of Jessica Austin ("Austin Decl.") ¶¶ 7–8, Dkt. No. 26-1.) As

part of his onboarding process on November 2, 2016, Carter reviewed and completed various electronic forms, including an agreement to arbitrate his disputes with the company ("Agreement"). (*Id.* ¶¶ 10, 14.) The Agreement reads, in relevant part:

> You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.

(*Id.* Ex. C, Agreement ¶ 1, Dkt. No. 26-1.) The Agreement requires Carter to arbitrate all "Covered Claims"—defined as any claims he may have against CVS or its agents arising out of his employment or termination, including "disputes arising out of or relating to the validity, enforceability or breach of this Agreement." (Agreement ¶ 2.) But the Agreement also specifies that Carter may file administrative complaints with federal, state, or local agencies, such as the Equal Employment Opportunity Commission or National Labor Relations Board. (*Id.* ¶ 3.) And it further explains that employees are not required to agree to arbitration, and that Carter could opt out of the Agreement by mailing a letter to CVS no later than 30 days after signing it. (*Id.* ¶ 7.) Carter did not opt out after signing the Agreement. (Austin Decl. ¶ 18.)

Carter opened an administrative case against CVS with the Illinois Department of Human Rights ("IDHR"), and on September 22, 2017, the parties reached a settlement through a mediation organized by the IDHR. (Def.'s Reply at 2, Dkt. No. 32.) Carter later revoked that settlement agreement. (*Id.*) In February 2018, Carter filed a lawsuit in this District against CVS for sexual harassment and discrimination based on his sexual orientation ("2018 Action"). (*See* Compl., *Carter v. CVS Pharmacy*, No. 18-cv-1482 (N.D. Ill Feb. 27, 2018), Dkt. No. 1.)[1] The district court in the 2018 Action granted CVS's motion to compel arbitration, dismissing the case.

---

[1] This Court takes judicial notice of the docket in the parties' 2018 Action, as permitted under Federal Rule of Evidence 201. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) (instructing that a court may take judicial notice of public records and the facts contained therein as long as they are not subject to reasonable dispute).

(*See* Order, *Carter*, No. 18-cv-1482 (Jan. 15, 2019), Dkt. No. 39.) Carter then opened a case with the American Arbitration Association ("AAA"), but the AAA arbitrator dismissed his claims as untimely. (Compl. ¶ 3, Dkt. No. 1.) After that dismissal, Carter petitioned to appeal the ruling against him in the 2018 Action *in forma pauperis*. (Mot. for Leave, *Carter*, No. 18-cv-1482 (Aug. 5, 2019), Dkt. No. 42.) The district court denied Carter's motion, pointing out that he filed his notice of appeal 201 days after final judgment was entered in the case—well outside the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A)—and that his notice did not raise any valid grounds for appeal. (Min. Entry, *Carter*, No. 18-cv-1482 (Aug. 13, 2019), Dkt. No. 47.) The Seventh Circuit later dismissed Carter's appeal as untimely. (Certified Copy of Order, *Carter*, No. 18-cv-1482 (Oct. 11, 2019), Dkt. No. 49.)

Carter's present suit alleges that CVS breached the Agreement by conspiring with the IDHR to avoid arbitration of his claims. Specifically, Carter accuses CVS of concealing the existence of the Agreement when he first brought his claims to the IDHR in 2017. (Compl. ¶ 2.) Carter contends that if CVS had brought the Agreement to his attention then, he would have filed his case with the AAA earlier, within the relevant statute of limitations period. (*Id.*) CVS now moves to dismiss Carter's present claims, arguing that they, too, are subject to arbitration pursuant to the Agreement. (Dkt. No. 25.)

## DISCUSSION

CVS moves to dismiss Carter's claims under both Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(3) for improper venue. Within the Seventh Circuit, motions to dismiss and compel arbitration are properly brought under Rule 12(b)(3) because "[a]n agreement to arbitrate is a type of forum selection clause." *Jackson*, 764 F.3d at 773 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630–31 (1985); *Sherwood v. Marquette*

3

*Transp. Co.*, 587 F.3d 841, 844 (7th Cir. 2009)). The Court therefore considers CVS's motion under Rule 12(b)(3).[2] In ruling on a motion to dismiss for improper venue, the Court is free to consider evidence outside the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011). In reviewing such evidence, the Court construes all reasonable inferences in the plaintiff's favor. *Jackson*, 764 F.3d at 773. At the same time, however, "[f]ederal policy favors the enforcement of private arbitration agreements." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). Thus, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Faulkenberg*, 637 F.3d at 808 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "governs the enforcement, validity, and interpretation of arbitration clauses." *Jain v. De Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA requires courts to compel arbitration if there is a valid arbitration agreement in place between the parties that covers the issue in controversy. 9 U.S.C. § 4. The burden is on the party seeking to arbitrate to prove that there is an underlying enforceable arbitration agreement. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018); *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) ("[A] party seeking to enforce an agreement has the burden of establishing the existence of an agreement." (internal quotation marks and citation omitted)).

---

[2] Carter's complaint appears to assert only a state-law claim for breach of contract. But CVS has not presented any argument that subject-matter jurisdiction is lacking apart from the prior agreement to arbitrate. *See Varma v. TCC Wireless, LLC*, No. 19-cv-7153, 2020 WL 4677118, at *2 (N.D. Ill. Aug. 12, 2020) (noting that the existence of an arbitration agreement impacts venue, not jurisdiction). At this point, the Court has no reason to doubt that it has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332. The present opinion is thus focused exclusively on the question of venue.

Generally, it is appropriate for the Court to compel arbitration if the movant shows that the following three elements are met: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). CVS has offered as evidence of the first two elements a copy of Carter's signed Agreement, in which he promised to arbitrate any claims with CVS arising out of the Agreement itself, supported by a CVS Human Resources director's declaration submitted under penalty of perjury. The Court finds this evidence sufficient to establish the first two elements. The third element, Carter's refusal to arbitrate, is clearly present as well, since Carter brought this case in federal district court and opposes arbitration. Thus, the Court must compel arbitration of his claims unless he can point to specific evidence in the record demonstrating that there is a genuine dispute as to the enforceability or applicability of the Agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (explaining that courts have analogized the "standard a party seeking to avoid compelled arbitration must meet" to that required to oppose summary judgment under Rule 56).

The Court follows the Seventh Circuit's guidance to construe *pro se* filings liberally and "will address any cogent arguments [it is] able to discern." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).[3] Carter makes two basic arguments against compelling arbitration. First, he argues that he only had minutes to review the Agreement before the relevant webpage timed out, and therefore was pressured to sign too quickly. Second, Carter argues that

---

[3] Carter responded to CVS's motion to dismiss by filing his own motion to allow the proceedings to continue and to deny CVS's motion. (Pl.'s Mot. in Opp'n, Dkt. No. 28.) The Court noted that though Carter styled his filing as a motion, it would treat the filing as a response brief, and also set another date for Carter to file any further argument in opposition to CVS's brief. (*See* June 11, 2020 Min. Entry, Dkt. No. 29; Pl.'s Resp. Br. in Opp'n, Dkt. No. 30.) After CVS filed its reply brief (Dkt. No. 32), Carter filed a motion to present relevant factual background and evidence to reject CVS's motion to dismiss (Dkt. No. 34), which the Court construes as a sur-reply brief. (*See* Sept. 22, 2020 Min. Entry, Dkt. No. 36.)

CVS made arbitration impossible by failing to present the Agreement during the parties' mediation before the IDHR, instead waiting until it was nearly too late for Carter to arbitrate.

Carter's argument that he was pressured to sign the Agreement under a time constraint essentially amounts to a claim that that the contract is invalid because he did not properly assent. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (noting that valid "[f]ormation of a contract requires mutual assent in virtually all jurisdictions"). "In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts." *UnitedHealthcare, Inc.*, 800 F.3d at 857. Neither party here has presented argument concerning which state's laws should apply to their dispute. "[A]bsent a challenge by either party as to the choice of law, the law of the forum state will govern the substantive issues raised in the pleadings." *Parrillo v. Safeway Ins. Co.*, No. 93 C 7281, 1994 WL 380625, at *2 (N.D. Ill. July 18, 1994). The Court thus applies Illinois contract law.

Illinois takes an objective approach to the question of mutual assent, looking at whether the parties' "'outward expressions such as words and acts'" demonstrate their intent to agree to the contract's terms. *Sgouros*, 817 F.3d at 1034 (quoting *Bank Comput. Network Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 442 N.E.2d 586, 591 (Ill. App. Ct. 1982)). A "party's secret, undisclosed intentions or purely subjective understandings" of the contract are thus not as important as his actions and statements. *Id.* (internal quotation marks and citations omitted). When a party signs a written contract, he is generally presumed to have agreed to all of its terms. *Id.* In this case, CVS has offered the signed Agreement as evidence. Carter therefore must point to other evidence in the record to rebut the presumption that he agreed to arbitrate his disputes with CVS. While he has claimed that CVS only "allowed [him] minutes to read and understand" the

Agreement before the relevant webpage timed out (Pl.'s Mot. in Opp'n ¶ 2, Dkt. No. 28), Carter has not supported these statements with an affidavit or declaration. Even if he had, those claims do not contain enough detail—*e.g.*, the number of minutes he was given to review the Agreement, an explanation as to why he could not return to the webpage after it timed out—to show that Carter was under undue influence or duress to sign the Agreement, as he claims. (*Id.*) Furthermore, the two-page Agreement states that employees are not required to agree to arbitration and can opt out after signing. The Court thus finds that Carter has failed to create a genuine issue as to the validity of the Agreement.

  The Court next turns to Carter's contention that CVS made it impossible for him to comply with the Agreement by purposefully concealing its existence throughout the IDHR matter. First, by the terms of the Agreement, Carter's IDHR matter was not subject to arbitration. (*See* Agreement ¶ 3.) Thus, in failing to bring the Agreement to Carter's attention during the IDHR case, CVS did not act contrary to its terms. Next, it is not clear from Carter's submissions how CVS could have kept the Agreement secret from him when he personally signed it at the start of his employment. *See Sgouros*, 817 F.3d at 1034 ("Generally, a party who signs a written contract is presumed to have notice of all of the contract's terms."). But regardless, Carter's impossibility argument fails. Under Illinois law, the doctrine of impossibility excuses a party's performance if it becomes "objectively impossible due to destruction of the subject matter of the contract or by operation of law." *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933 N.E.2d 860, 864–65 (Ill. App. Ct. 2010). The party arguing impossibility must show that the circumstances rendering his performance impossible were not reasonably foreseeable at the time of contracting. *Id.* at 865. The doctrine is "narrowly applied, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be

7

excused only in extreme circumstances." *Id.* (internal quotation marks and citation omitted) (finding that the doctrine of impossibility did not excuse a party's failure to obtain commercially practical financing after the 2008 global financial crisis because the parties could have anticipated that they might face some difficulty in securing a loan).

Carter has failed to show that the doctrine of impossibility applies in this case. The Court is not persuaded that it is impossible for Carter to bring his present claims to arbitration. His harassment and discrimination claims against CVS were dismissed in arbitration as untimely, but his current claims—concerning CVS's breach of the Agreement—may still be timely. Moreover, Carter has not set forth any argument that the unavailability of arbitration on statute of limitations grounds was not reasonably foreseeable at the time of contracting. Statutes of limitations apply to nearly all civil claims. The untimeliness of a complaint is thus far from the "extreme circumstance[]" that warrants excusing a party's contractual performance. *See id.*

Because Carter has not presented sufficient evidence that the doctrine of impossibility excuses his performance under the Agreement or that he did not validly assent to the Agreement, the Court grants CVS's motion to compel arbitration of his claims. (Dkt. No. 25.)

## CONCLUSION

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Carter's claims are dismissed without prejudice to him pursuing those claims in the appropriate forum.

ENTERED:

Dated: March 29, 2021

_____
Andrea R. Wood
United States District Judge